[No. B154786. Second Dist., Div. Five. Dec. 16, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIT FANUEL AUGBORNE III, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.C.-F.

**COUNSEL**

George O. Benton, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell and Theresa A. Cochrane, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Brit Fanuel Augborne III, appeals from his convictions for second degree robbery (Pen. Code,[1] § 211) and criminal threats. (§ 422.) The jury also found a criminal street gang enhancement allegation to be true. (§ 186.22, subd. (b)(1).) Finally, defendant admitted that at the time he committed the robbery he was released from custody on his own recognizance. (§ 12022.1.) Defendant argues there was insufficient evidence to support the section 186.22 gang enhancement; the trial court erroneously imposed two section 12022.1 on-bail enhancements; and the prosecutor committed misconduct. The Attorney General argues the judgment should be modified to impose a fine pursuant to section 1202.45, defendant should receive no presentence credits, and the sentence in this case should run consecutively to that in case No. YA046778.

In the published portion of this opinion, we discuss two issues. First we discuss whether there was sufficient evidence to support the section 186.22

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

gang enhancement finding. In order for the gang enhancement to apply, section 186.22, subdivision (e) requires that two or more enumerated offenses be committed within specified times frames. These two or more section 186.22, subdivision (e) crimes are commonly referred to as "predicate offenses." (See *People v. Zermeno* (1999) 21 Cal.4th 927, 930 [89 Cal.Rptr.2d 863, 986 P.2d 196] ["A gang engages in a 'pattern of criminal gang activity' when its members participate in 'two or more' statutorily enumerated criminal offenses (the so-called 'predicate offenses') that are committed within a certain time frame and 'on separate occasions, or by two or more persons.' [Citation.]"]; *People v. Loeun* (1997) 17 Cal.4th 1, 4 [69 Cal.Rptr.2d 776, 947 P.2d 1313] ["A gang engages in a 'pattern of criminal gang activity' when its members participate in 'two or more' specified criminal offenses (the so-called 'predicate offenses') that are committed within a certain time frame and 'on separate occasions, or by two or more persons.' [Citation.]"].) Section 186.22, subdivision (e) explicitly requires that the two predicate offenses be committed on separate occasions, or by "two or more persons." Defendant argues that in order for the section 186.22 enhancement to apply, the persons perpetrating the predicate offenses must be gang members when the crimes were committed. Based on the express language of section 186.22, subdivisions (b), (e), and (f) and the analysis in a closely related context in *People v. Gardeley* (1996) 14 Cal.4th 605, 620-621 [59 Cal.Rptr.2d 356, 927 P.2d 713], we conclude that the prosecutor has no duty to prove that the persons perpetrating the predicate offenses were gang members when the enumerated crimes were committed. Second, in the published portion of this opinion, we discuss why only one section 12022.1 on-bail enhancement can be imposed in this case. Subject to other sentencing modifications, the judgment is otherwise affirmed.

## II. Factual Background

■ We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909.)

### A. *Criminal Threats Evidence*

On March 19, 2001, Pamela Yancy was the caretaker at an apartment complex in Gardena. At approximately 10:00 a.m., a tenant complained to Ms. Yancy about Vincent Augustus's car. Mr. Augustus's car was parked in the tenant's assigned parking stall. Ms. Yancy approached Mr. Augustus and defendant. Ms. Yancy asked Mr. Augustus to move his car or have it towed. Ms. Yancy spoke with Mr. Augustus for approximately five or 10 minutes. Mr. Augustus was yelling at Ms. Yancy and using foul language.

Ms. Yancy knew Mr. Augustus was a member of the gang in her neighborhood. Ms. Yancy also knew many local gang members. The gang members often "hung out" at her apartment complex. The gang's graffiti was also on the walls of the apartment complex. When Ms. Yancy walked back toward her residence, defendant told her, " 'Yeah, yeah, that is on [the local gang].' " Ms. Yancy told defendant she was not talking to him. Defendant said: " 'That's on [the local gang], bitch. That's on [the local gang].' " Ms. Yancy responded, "Fuck [the local gang]." Defendant told Ms. Yancy: " 'Bitch, I'll kill you. I'll kill you. That is on my dead homey who is resting in peace.' " Ms. Yancy believed defendant because of the "evil" way he looked at her. Defendant stood immediately next to Ms. Yancy. Defendant balled up his fists on the side of his body as he spoke to her. When defendant leaned in Ms. Yancy's direction, other men standing nearby told him to leave her alone. When Ms. Yancy got inside her apartment, defendant kicked her door down and repeated: " 'I'll kill you. I'll kill you, bitch. I'll kill you, bitch. That is on [the local gang]. That is on [the local gang].' " Ms. Yancy was terrified. She believed defendant would kill her because he was a gang member. Ms. Yancy did not call the police at that time because she feared defendant would kill her.

Defendant left but returned approximately one hour later. Defendant sat on Ms. Yancy's porch for a few minutes without saying anything. Defendant left her porch. However, Ms. Yancy saw defendant near her apartment later in the day and again that evening. Defendant did not live in the apartment complex. At approximately 6:30 a.m. the following morning, Ms. Yancy saw that the wall directly next to her door as well as her living room window had graffiti, which referred to the local gang. The writing had not been there when defendant threatened her. Ms. Yancy became "really scared." Ms. Yancy called the police. Thereafter, the police moved her to another residence. Ms. Yancy was nervous and afraid of defendant at the time she testified at trial.

### B.  *The Robbery*

Three days later on March 22, 2001, Barbara Ingalls was returning a shopping cart to the grocery store where she had shopped, she felt someone grabbing her purse from her shoulder. Ms. Ingalls tried to grab the purse back. Ms. Ingalls saw the back of a man on a bicycle that she believed took her purse. The man was wearing black clothing. Nobody else was present. Ms. Ingalls ran after the man when she realized her Social Security card, driver's license, and credit cards were inside her purse. As Ms. Ingalls went to her car, two store employees pointed toward the next street. Ms. Ingalls drove out of the parking lot in the direction of the bicyclist. Ms. Ingalls saw

a man riding a bicycle with her purse hanging on the handlebars. The bicyclist was wearing clothing similar to the man that took her purse. Ms. Ingalls tried to get the man to stop by honking her horn three times. Ms. Ingalls then turned her car in the direction of the bicyclist. Ms. Ingalls lost control of her car. She drove over the curb and into a ditch. Ms. Ingalls's car also struck defendant. After Ms. Ingalls got out of her car, she could not see the bicycle, her purse, or defendant. Ms. Ingalls later found her purse behind a nearby fence. After the police arrived, a bicycle was found behind the fence as well.

Joshua Ortega was parked near the area where Ms. Ingalls lost control of her car. Mr. Ortega saw an individual wearing dark clothing riding a bicycle on the sidewalk. Shortly thereafter, Mr. Ortega saw the bicyclist drive across the street. Ms. Ingalls's car was following the bicyclist when she swerved into a ditch. Mr. Ortega called the police on his cellular phone. As Mr. Ortega approached the ditch where Ms. Ingalls's car had stopped, he saw a damaged bicycle and the bicyclist on the ground. The bicyclist got up, limped toward the fence, and threw the bicycle and a black bag over the fence. The bicyclist then quickly limped away.

Gary Greene drove past where Ms. Ingalls's car had crashed. Mr. Greene saw a tall, slender, fair complexioned individual down the block. The man wore long pants that looked like they had been cut off below the knee, dark tennis shoes, white socks, and a dark shirt or jacket. The man was moving quickly but was also limping. Mr. Greene drove into his own driveway on 143d Street. Mr. Green then saw the man go into a neighbor's backyard. Mr. Greene returned to the scene of the accident when he saw the police arrive. Mr. Greene told the police what he had seen. Mr. Greene was asked to identify defendant. Mr. Greene recognized the clothing defendant was wearing. Defendant was wearing a white shirt rather than the dark one Mr. Greene had seen earlier. However, defendant's height, weight, and stature were the same as the person Mr. Greene had seen limping earlier. Defendant was limping at the time Mr. Greene made the identification. Mr. Greene identified defendant at trial as the individual limping into the neighbor's yard.

Gardena Police Officers Carlos Fernandez and James Heitmeyer responded to an emergency call. Several witnesses directed the two officers to 143d Street. With the assistance of other officers, the area was contained. With the assistance of a police dog, the officers searched the yards of nearby residences. The officers located defendant in the garage rafters of a home on 144th Street. Once defendant complied with the officers' orders to come down, they saw scrapes on his hands and left leg. Defendant's left leg was

also bleeding. Defendant's shirt and long shorts were torn. Ms. Ingalls was taken to where defendant was detained for a field identification following an admonition. Ms. Ingalls was unable to identify defendant's face because she had never seen it. Defendant was wearing a white shirt at the time. Defendant's height and weight were similar to the individual she saw riding the bicycle with her purse. At trial, Ms. Ingalls testified that defendant's body shape was similar to the individual riding the bicycle.

Officer Fernandez rode to the hospital in an ambulance with defendant. When asked at the hospital how he incurred his injuries, defendant stated he jumped over a fence. A doctor spoke with defendant about the injuries. Defendant was asked how he was injured. Defendant on this occasion stated he did not know how he was injured. While waiting for the examination to be completed, defendant asked Officer Heitmeyer, "Whatever happened to the purse?" Officers Fernandez and Heitmeyer had not spoken to defendant about the purse or any other facts related to the robbery. Officer Heitmeyer also heard defendant say, "I am going to sue that bitch for trying to kill me." Detective Juckett interviewed defendant at the police station. Defendant was advised of his constitutional rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, 477-479 [86 S.Ct. 1602, 1629-1630, 16 L.Ed.2d 694, 10 A.L.R.3d 974]. After waiving those rights, defendant asked about pressing charges against the woman that hit him.

## C.  Gang Evidence

Gardena Police Detective Brian Juckett was assigned to the gang investigation unit in 2001. The focus of that unit was to investigate gang-related crimes and identify gang members. Detective Juckett was familiar with the local gang in Gardena. The gang had been in existence since the 1970's. The gang also had members in other states. The local gang had as many as 400 members in Gardena. Some were inactive because they were in custody or had "moved on in their lives." Detective Juckett was familiar with murders, robberies, burglaries, assaults with a deadly weapon, acts of victim intimidation, incidents of possession of narcotics for sale, and handgun violations committed by local gang members. Detective Juckett could identify gang members by their attire; tattoos; areas frequented; individuals they associated with; reliable sources; self-admissions; and gang documentation.

Detective Juckett knew defendant was a member of the local gang. Defendant had previously acknowledged such to Detective Juckett. Defendant acknowledged his local gang membership on at least five or six occasions. A booking form completed and signed by defendant on December 31, 2000, indicated he was a member of the local gang. Detective Juckett was

present during the booking process at the time of defendant's robbery arrest in this case on March 22, 2001. Defendant admitted that he was a member of the local gang on the booking form completed on that date. Defendant had a tattoo on his left arm which consisted of the initials of the gang. A photo taken when defendant was booked into jail on February 17, 2001, depicting the tattoo was introduced into evidence.

Detective Juckett was also aware that Mr. Augustus was a member of the same gang. As noted earlier, Mr. Augustus had illegally parked his car which gave rise to defendant's threats directed at Ms. Yancy. Detective Juckett was familiar with Vernon Wilson, another gang member. Detective Juckett was the arresting and investigating officer in a 1999 case involving Mr. Wilson. Mr. Wilson had a concealable .357 revolver in his possession at the time he was arrested. Mr. Wilson was convicted of possessing the firearm and marijuana for purposes of sale. Detective Juckett also knew that Dante Womack was a member of the local gang in Gardena. Mr. Womack was convicted of robbery in 1998. Detective Juckett was also aware that Juan Ferone was a member of the local gang. In 1996, Detective Juckett was one of the arresting and investigating officers in a burglary case involving Mr. Ferone and Mr. Augustus, which resulted in their convictions. Detective Juckett described the graffiti, hand symbols, clothing, and colors used to identify the local gang.

## III. Discussion

### A. *The Gang Enhancement*

Defendant argues the trial court improperly denied his section 1118.1 motion with respect to the section 186.22 gang enhancement. Defendant further argues there was insufficient evidence to establish the pattern of criminal activity necessary to show defendant belonged to a criminal street gang. Defendant reasons that the "pattern of street gang" element of section 186.22, subdivision (e) requires that the predicate offense be committed by persons who were gang members when those crimes were committed.

After the prosecution had rested, defendant made a section 1118.1 motion. Defendant argued Detective Juckett's testimony concerning the predicate offenses by other gang members did not demonstrate that they were gang members at the time the offenses were committed. As a result, defense counsel argued there was insufficient evidence to demonstrate the crimes were committed for the benefit of the gang or to establish the predicate offenses required to prove a pattern of gang activity pursuant to section 186.22, subdivision (b). The prosecutor argued: "I don't think there is

anything in the case law that requires that there be an explicit question of what date and time was this person a gang member. I think that can be inferred from the evidence that was introduced from the officer's testimony regarding his gang and from the dates of conviction." We conclude when a member of a gang commits a predicate offense, section 186.22, subdivisions (b) and (e), do not require the prosecution to prove the individual committing the crime was a gang member *at the time of its commission.*

We utilize the substantial evidence test to determine whether the prosecution has introduced sufficient evidence to meet its burden of proof beyond a reasonable doubt. (*Jackson v. Virginia, supra,* 443 U.S. at pp. 318-319 [99 S.Ct. at pp. 2788-2789]; *People v. Osband, supra,* 13 Cal.4th at p. 690; *Taylor v. Stainer, supra,* 31 F.3d at pp. 908-909.) The California Supreme Court has held, "The substantial evidence test applies both when an appellate court is reviewing on appeal the sufficiency of the evidence to support a conviction and when a trial court is deciding the same issue in the context of a motion for acquittal under Penal Code section 1118.1 at the close of evidence." (*People v. Cuevas* (1995) 12 Cal.4th 252, 261 [48 Cal.Rptr.2d 135, 906 P.2d 1290]; see also *People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13 [36 Cal.Rptr.2d 474, 885 P.2d 887] [evidence includes all reasonable inferences that may be drawn]; *People v. Trevino* (1985) 39 Cal.3d 667, 695 [217 Cal.Rptr. 652, 704 P.2d 719], overruled on another ground in *People v. Johnson* (1989) 47 Cal.3d 1194, 1221 [255 Cal.Rptr. 569, 767 P.2d 1047].) The substantial evidence standard of review applies to section 186.22 gang enhancements. (*People v. Ortiz* (1997) 57 Cal.App.4th 480, 484 [67 Cal.Rptr.2d 126]; *In re Lincoln J.* (1990) 223 Cal.App.3d 322, 330-331 [272 Cal.Rptr. 852].)

Section 186.22, subdivision (b)(1) provides: "[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows . . . ." Section 186.22, subdivision (e) defines "pattern of criminal gang activity" as follows: " '[P]attern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . . ." The term "criminal street gang" is defined in section 186.22, subdivision (f) as follows: "As used in this chapter, 'criminal street gang' means

any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

■  The California Supreme Court recently interpreted these portions of the section 186.22 as follows: "Evidence of past or present conduct by gang members involving the commission of one or more of the statutorily enumerated crimes is relevant in determining the group's primary activities. Both past and present offenses have some tendency in reason to show the group's primary activity (see Evid. Code, § 210) and therefore fall within the general rule of admissibility (*id.*, § 351). . . ." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323 [109 Cal.Rptr.2d 851, 27 P.3d 739].) The *Sengpadychith* court concluded: "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute [§ 186.22, subd. (e)]. Also sufficient might be expert testimony, as occurred in *Gardeley, supra,* 14 Cal.4th 605. . . ." (*People v. Sengpadychith, supra,* 26 Cal.4th at p. 324, original italics.) In *Gardeley,* a San Jose Police Department detective testified that the defendant's gang engaged in the sales of narcotics and witness intimidation. The detective had personally investigated "hundreds of crimes committed by gang members." The detective gathered information from conversations with gang members as well as San Jose Police Department employees and other law enforcement agencies. (*People v. Gardeley, supra,* 14 Cal.4th at p. 620.) Opinion testimony of the type presented in *Gardeley* may constitute evidence sufficient to support a section 186.22 finding. (*People v. Sengpadychith, supra,* 26 Cal.4th at p. 324; *People v. Duran* (2002) 97 Cal.App.4th 1448, 1465 [119 Cal.Rptr.2d 272].)

■  In this case, Detective Juckett had been assigned to the gang and special investigations units for a total of four of his 16 years as a police officer. In these assignments, Detective Juckett's primary responsibilities involved gangs in the City of Gardena and elsewhere. He was familiar with gang paraphernalia, symbols, tattoos, names, members, and crimes. Detective Juckett had offered his opinions concerning gangs in superior court and before the grand jury. He also spoke with many members of the local gang in Gardena and was involved in their arrests. Detective Juckett believed that defendant was an active member in the local gang in Gardena. Detective Juckett testified in this trial regarding past felony convictions of members of this gang. Further, Detective Juckett's testimony alone constituted substantial evidence defendant was a member of the gang. Finally, he believed the

criminal threats in this case were committed at the direction, for the promotion, and assistance of criminal conduct by the gang members. The facts of the present case coupled with Detective Juckett's fact-based specific opinion and instances of past criminal activities constituted substantial evidence to support the implied finding the crimes were committed to promote gang activities. (*People v. Sengpadychith, supra,* 26 Cal.4th at pp. 322-324; *People v. Gardeley, supra,* 14 Cal.4th at pp. 624-626.) As to the testimony concerning those facts and their relationship to the various 186.22 requirements, except the predicate offenses element, defendant offers no serious argument.

Defendant argues though that the prosecution must also demonstrate that the past convictions of individuals were committed when they were gang members. Whether section 186.22 requires the perpetrator of a predicate offense to be a gang member is a question of statutory interpretation. When examining a statute, we apply the following standard of statutory review described by the California Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; see also *People v. Loeun, supra,* 17 Cal.4th at pp. 8-9 [duty to ascertain and effectuate Legislature's intent in enacting § 186.22].) The Supreme Court has emphasized that the words in a statute selected by the Legislature must be given a "common sense" meaning when it noted: " 'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)' (*People v. Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].)" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) However, the literal meaning of a statute must be in accord with its purpose as the Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be

construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]. . . .' " In *Lungren v. Deukmejian, supra,* 45 Cal.3d at page 735, our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ." The Supreme Court has held: " 'The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers.' (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617].)" (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) Further, the Supreme Court has held: "We have recognized that a wide variety of factors may illuminate the legislative design, ' "such as context, the object in view, the evils to be remedied, the history of the time and of legislation upon the same subject, public policy and contemporaneous construction." ' (*In re Marriage of Bouquet* [(1976)] 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371], quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].)" (*Walters v. Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443].)

██ The relevant statutory language is unambiguous. As noted previously, in order for a gang enhancement to be sustained, section 186.22, subdivision (b) requires: the accused be convicted of a felony; the felony must have been committed for the benefit or at the direction of or in association with a criminal street gang; and the felony must have been committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." A criminal street gang as defined in section 186.22, subdivision (f) consists of the following: a formal or informal ongoing organization, association, or group of three or more persons; one of the organization's primary activities is the commission of one or more of the enumerated offenses in section 186.22, subdivision (e); the organization has a common name or identifying sign or symbol; and the organization's members individually or collectively engage in or have engaged in a "pattern of criminal gang activity" as defined in section 186.22, subdivision (e). The term "pattern of criminal gang activity" as defined in section 186.22, subdivision (e), only requires: the attempted or completed commission or a conspiracy to commit two or more of the section 186.22 subdivision (e) enumerated offenses; one of the offenses must have occurred after September 26, 1988, the effective date of chapter 11 of title 7 of part 1 of the Penal Code (§ 186.20); the last of the two requisite offenses must have

occurred within three years after the first crime; the predicate crimes must have either been committed on separate occasions; or by at least two different persons. (See *People v. Loeun, supra,* 17 Cal.4th 1, 9-10 [69 Cal.Rptr.2d 776; 947 P.2d 1313].) As can be noted, none of the elements of the gang enhancement statute require the two or more persons committing the two predicate crimes be gang members *at the time* the offenses were committed. Defendant's legal contention that the two section 186.22, subdivision (e) predicate crimes had to be committed by two persons *when* they were gang members requires we add an additional element to section 186.22, something we are prohibited from doing.

A similar issue was presented to the California Supreme Court in *People v. Gardeley, supra,* 14 Cal.4th at pages 620-621. The issue presented to the Supreme Court was as follows: "Thus, a gang otherwise meeting the statutory definition of a 'criminal street gang' . . . is considered a criminal street gang under the STEP Act only if its members 'individually or collectively engage in or have engaged in a pattern of criminal gang activity' (§ 186.22, subd. (f)) by 'the commission, attempted commission, or solicitation of *two or more*' (italics added) of the statutorily enumerated offenses within the specified time frame . . . . Defendants, however, read yet another requirement into the statute. They contend that the Legislature must have also intended that the 'two or more' predicate offenses that are necessary to establish 'a pattern of criminal gang activity' be 'gang related.' In other words, according to defendants, the prosecution must establish not only the requirements for predicate offenses set forth in the statute, but also that each such offense was committed *for the benefit of, at the direction of, or in association with the gang.*" (*Id.* at p. 621, original italics.) The Supreme Court rejected the defendants' assertion that the two or more section 186.22, subdivision (e) predicate offenses must be gang related. The Supreme Court reasoned thusly: "Section 186.22, subdivision (e) defines 'pattern of criminal gang activity' as 'the commission, attempted commission, or solicitation of two or more' enumerated offenses occurring within a specified time period, and 'committed on separate occasions, or by two or more persons.' Nothing in this statutory language suggests an intent by the Legislature to require the 'two or more' predicate offenses to have been committed 'for the benefit of, at the direction of, or in association with' the gang, as defendants contend." (*Gardeley,* at p. 621.) *Gardeley* holds that predicate offenses need not have been committed for the benefit of, at the direction of, or in association with the gang. It reasonably follows then that the prosecutor need not demonstrate that the two or more individuals who committed the predicate crimes were gang members *at the time* the offenses were committed.

### B. *The On-bail Enhancement*

In count 1 of the amended information filed September 13, 2001, defendant was charged with making a criminal threat on March 19, 2001,

against Ms. Yancy in violation of section 422. Count 1 also contained a section 186.22 gang enhancement allegation. In count 2, defendant was charged with robbing Ms. Ingalls on March 22, 2001. After count 2, the September 13, 2001, amended information also contained the following section 12022.1 on bail allegation which stated, "It is further alleged as to count(s) 1 and 2 at the time of the commission of the above offense, the defendant(s) Brit Fanuel Augborne, III, was released from custody on bail or Own Recognizance in Case Number YA046778 within the meaning of Penal Code section 12022.1." Defendant admitted he was released on bail at the time of the commission of the two crimes directed at Ms. Yancy and Ms. Ingalls. The trial court imposed a section 12022.1 enhancement as to both counts. As to count 1, the criminal threats conviction, the trial court imposed a two-year term as a result of defendant's admission as to the validity of the on-bail allegation. As to count 2, the robbery of Ms. Ingalls, the trial court imposed one-third of the midterm, one year. Additionally, the trial court made the following oral order: "The court finds that there are no mitigating factors as to that count 2, as to the enhancement in count 2, *12022.2(B)*. The court will impose a mandatory consecutive eight months in the state prison, which is one-third of the two-year-statutory-mandatory-consecutive term, and that is consecutive to the base term in count 2." (Italics added.) As can be noted, the trial court referred to section 12022.2, subdivision (b) which involves an enhancement for wearing body armor during the commission of a violent felony.[2] The amended information did not allege the applicability of a section 12022.2 body armor allegation. No evidence was introduced of any body armor. The deputy district attorney never argued that the jury should find defendant was wearing body armor when he robbed Ms. Ingalls. No section 12022.2 body armor finding was ever returned. The abstract of judgment indicates that the trial court imposed an eight-month sentence on a section 12022.1 on-bail allegation as to count 2. Assuming the court reporter accurately transcribed the trial court's reference to section 12022.2, the body armor provision, common sense tells us the trial court intended to impose an eight-month consecutive section 12022.1 on-bail enhancement as to count 2. We assume for purposes of discussion that the trial court intended to do that which is obvious—impose a consecutive section 12022.1 on-bail enhancement as to count 2.

We agree with defendant that the trial court could not impose two section 12022.1 on-bail enhancements in this case. The California Supreme Court

[2]Section 12022.2, subdivision (b) provides: "Any person who wears a body vest in the commission or attempted commission of a violent offense, as defined in subdivision (b) of Section 12021.1, shall, upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or five years. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence."

has recognized that there are at least two types of sentence enhancements. In *People v. Coronado* (1995) 12 Cal.4th 145, 156-157 [48 Cal.Rptr.2d 77, 906 P.2d 1232], the California Supreme Court held: "[T]here are at least two types of sentence enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense. (See *People* v. *Tassell* (1984) 36 Cal.3d 77, 90 [201 Cal.Rptr. 567, 679 P.2d 1], overruled on other grounds; *People* v. *Ewoldt* (1994) 7 Cal.4th 380, 398-401 [27 Cal.Rptr.2d 646, 867 P.2d 757].) Prior prison term enhancements, such as those authorized by section 667.5(b), fall into the first category and are attributable to the defendant's status as a repeat offender. (See *People* v. *McClanahan* (1992) 3 Cal.4th 860, 869 [12 Cal.Rptr.2d 719, 838 P.2d 241]; *In re Foss* (1974) 10 Cal.3d 910, 922 [112 Cal.Rptr. 649, 519 P.2d 1073], disapproved on other grounds, *People* v. *White* (1976) 16 Cal.3d 791, 796-797, fn. 3 [129 Cal.Rptr. 769, 549 P.2d 537].) The second category of enhancements, which are exemplified by those authorized under sections 12022.5 and 12022.7, arise from the circumstances of the crime and typically focus on what the defendant did when the current offense was committed. (See *People* v. *Tassell, supra,* 36 Cal.3d at p. 90.)" (Fn. and italics omitted.) In *People v. McClanahan, supra,* 3 Cal.4th at pages 870-871, the California Supreme Court explicitly noted that a section 12022.1 enhancement is one that describes the nature of the offender as distinguished from the crime. Other decisions are in accord. (*People v. Anderson* (1995) 35 Cal.App.4th 587, 592-593 [41 Cal.Rptr.2d 474]; *People v. Smith* (1992) 10 Cal.App.4th 178, 182 [12 Cal.Rptr.2d 546]; *People v. Garrett* (1991) 231 Cal.App.3d 1524, 1529, fn. 3 [283 Cal.Rptr. 87]; *People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1260-1262 [263 Cal.Rptr. 183]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 195-196 [251 Cal.Rptr. 40]; *People v. White* (1988) 202 Cal.App.3d 862, 867-868 [249 Cal.Rptr. 165]; *People v. Decker* (1988) 199 Cal.App.3d 694, 696 [245 Cal.Rptr. 40].) Enhancements which describe the nature of the offender such as those pursuant to section 12022.1 are imposed only once in a particular case. (*People v. Tassell, supra,* 36 Cal.3d at p. 90; *People v. Smith, supra,* 10 Cal.App.4th at p. 182; *People v. Garrett, supra,* 231 Cal.App.3d at pp. 1528-1529 & fn. 3; *People v. Mackabee, supra,* 214 Cal.App.3d at pp. 1261-1262; *People v. Nguyen, supra,* 204 Cal.App.3d at pp. 195-196; *People v. White, supra,* 202 Cal.App.3d at pp. 867-868; *People v. Decker, supra,* 199 Cal.App.3d at p. 696.) Therefore, the section 12022.1 eight-month enhancement purportedly imposed as to count 2 is stricken.

C.-F.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 362.

## IV. DISPOSITION

The judgment is modified as follows. The eight-month enhancement imposed as to count 2 pursuant to Penal Code section 12022.1 is reversed and stricken. The superior court clerk is directed to correct the abstract of judgment to reflect defendant's presentence credits of five days. The sentence in this case is reversed. The sentence is modified as follows: count 2, three years; count 1, eight months consecutive to count 2; count 1 in case No. YA046778, eight months consecutive to count 2 in this case; plus five years pursuant to section 186.22, subdivision (b)(1), and two years pursuant to section 12022.1, subdivision (b). A six-month concurrent misdemeanor sentence is imposed as to count 2 in case No. YA046778. The order imposing a $1,000 penalty assessment pursuant to Penal Code section 1464 is vacated. The judgment is modified to impose and stay a $1,000 Penal Code section 1202.45 restitution fine. Upon issuance of the remittitur, the superior court clerk is to prepare a corrected abstract of judgment which reflects the foregoing modifications to the sentence and forward it to the Department of Corrections. The judgment is affirmed in all other respects.

Armstrong, J., and Mosk, J., concurred.

Petitions for a rehearing by the Supreme Court were denied January 13, 2003, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 9, 2003. Werdegar, J., Chin, J., and Moreno, J., were of the opinion that the petition should be granted.