Filed 10/19/20  P. v. Guevara CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B300821 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA446766) |
| v. | |
| HENRY GUEVARA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Leslie A. Swain, Judge.  Affirmed, with instructions.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, Joseph P. Lee and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The jury found defendant and appellant Henry Guevara guilty of two counts of attempted premeditated and deliberate murder. (Pen. Code, §§ 187/664 [counts 1 and 2].)[1] The jury found true the allegation that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), but the jurors were unable to reach a verdict regarding the allegation that Guevara personally used and discharged a firearm within the meaning of section 12022.53, subdivision (c).[2]

Guevara was sentenced to life with the possibility of parole in count 1, plus a consecutive sentence of 10 years for the gang enhancement. In count 2, Guevara was sentenced to a consecutive term of life with the possibility of parole.

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Guevara was also tried for charges in connection with a second incident, but the jury found him not guilty as to those counts.

2

The trial court exercised its discretion to strike the gang allegation in connection with count 2.[3]

On appeal, Guevara makes several arguments to support his contention that there was insufficient evidence to support the jury's true finding on the gang enhancement. Specifically, Guevara argues that there was not substantial evidence that the 41st Street gang engaged in a "pattern of criminal activity" because: (1) officer testimony that the individuals who were convicted of the predicate crimes were members of the same gang as Guevara was "generalized and unsupported," (2) the gang expert's testimony included testimonial hearsay under *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*), and (3) the official court documents offered to prove the predicate offenses were inadmissible for the purpose of proving that the offenses were committed within three years of each other. Guevara further argues that the 10-year consecutive term imposed under section 186.22, subdivision (b)(1)(C) in count 1 was unauthorized and must be corrected.

The people concede that the gang enhancement sentence must be corrected, but otherwise contest the substantive contentions.

We agree with the parties that the trial court erred in imposing the 10-year gang enhancement under section 186.22, subdivision (b)(1)(C), rather than the 15-year

---

[3] At the sentencing hearing, the court dismissed two prior prison term allegations (§ 667.5, subd. (b)), with the agreement of the prosecution.

3

minimum parole eligibility date under section 186.22, subdivision (b)(5).  (*People v. Lopez* (2005) 34 Cal.4th 1002, 1010–1011 (*Lopez*).)  We order that the abstract of judgment be modified accordingly, but otherwise affirm the trial court's judgment.

## FACTS

### *Incidents and Investigation*

On the morning of May 14, 2016, Ramon Vara and Carlos Venegas were heading home in Venegas's Escalade. Vara was driving and Venegas was seated in the rear passenger seat.  While they were stopped at a traffic light, Venegas noticed Guevara staring at them from a green Honda.  Guevara was the driver, the front passenger was a female, and there was a toddler in the rear passenger seat. Guevara began to follow Vara and Venegas, but at some point, they lost sight of him.  However, as Vara was about to make a left turn into their driveway, they noticed Guevara again.  Within seconds, Guevara stretched his arm out of the driver's window and began shooting at the Escalade.  Vara immediately turned into the driveway and sped to the back of the building, while Venegas ducked down.  Guevara fired between seven to eight shots, with five shots hitting the Escalade.  Neither Vara nor Venegas was injured.  Although Venegas did not want to call the police, Vara called 911 to report the shooting.

4

On May 16, 2016, two days after the shooting, Venegas met with Los Angeles Police Department (LAPD) Detective Dennis Walden, who showed him a six-pack photographic line up. Venegas selected Guevara's photograph and indicated that he was the person who shot at him. Detective Walden then showed Venegas a picture of a car, which Venegas identified as the car Guevara was driving on the day of the shooting. Guevara was arrested later that day.

Both Venegas and Vara had seen Guevara previously. Approximately one year before the shooting, Venegas encountered Guevara at Gilbert Lindsey Park. Venegas was at the park with a friend who was a Hang Out Boys (HOB) gang member. Guevara kicked Venegas out of the park because he thought Venegas was also a HOB member.

A few months before the May 14, 2016 shooting, Venegas and Vara were at a shop having the Escalade's brakes repaired. Guevara slowly approached in a white car and asked Vara, "Where you from, Dude?" To which Vara responded, "Nowhere. I don't gang bang." Guevara then asked, "Are you from HOB?" Vara responded, "I don't gang bang. I work for the fire department." Guevara then said "Fuck HOB" and "Fuck Fleas" and left.

The LAPD had conducted three field investigations (F.I.) of Guevara, in which he was identified as a 41st Street gang member. On May 21, 2010, Officer Jesse Cardenas and his partner conducted an F.I. of Guevara. Guevara provided information regarding his tattoos, moniker, and gang affiliation. On July 17, 2015, Officer Derrick Ybarra

5

completed an F.I. card documenting his contact with Guevara. Guevara informed Officer Ybarra that his moniker was "Rascal" and he was affiliated with the 41st Street gang. He also described his tattoos. On December 8, 2015, Officer Luis Lopez and his partner conducted a third F.I. in which Guevara again provided his gang affiliation and moniker.

### Gang Expert Testimony

LAPD Officer Richard Pacheco testified as the People's gang expert. He had been a peace officer for approximately seven years and was currently assigned to the Newton Division's gang enforcement detail. Pacheco participated in gang training at the academy, and with the California Criminal Gang Task Force. Throughout his career, he worked with current and former gang officers. During his assignments as a probation officer and at the Downtown Metropolitan Jail, Officer Pacheco regularly interacted with hundreds of gang members. While working at the Southeast and Newton Divisions, he was involved in hundreds of gang-related investigations and arrests. Officer Pacheco had testified as a gang expert on three occasions.

As part of the gang enforcement detail, Officer Pacheco handled all gang-related crimes, which included robberies, shootings, assaults with deadly weapons, murders, and other crimes in which a gang member was a suspect or a victim. Additionally, he deciphered gang graffiti, interrogated gang members, and attempted to identify gang members through

6

F.I.  Officer Pacheco described F.I.'s as consensual interactions between police officers and detained persons. He explained that in an F.I., an officer asks questions from an F.I. card, and records the person's answers.  Information that can be found in an F.I. card includes a person's name, physical description, birth date, driver's license number, tattoo description, monikers, and gang affiliations.

Officer Pacheco testified regarding certain aspects of gang culture.  He explained that a "moniker" is a gang member's nickname, the phrase "where you from" is used by gang members to intimidate and to determine whether a person is from another gang, and the term "hood" is gang vernacular for a gang's territory.  He also stated that although gang members are eager to disclose their gang affiliation, they do not discuss the gang's leadership.

There are approximately 30 to 40 gangs within the geographical area covered by LAPD's Newton Division. Officer Pacheco was familiar with approximately 10 of these gangs, including 41st Street and HOB.  Officer Pacheco stated that 41st Street is a local street gang that has been in existence since the 1980's.  It has approximately 70 members and they use the symbols "41", "CU," and "FF" as identifiers. The gang's primary activities consist of murder, attempted murder, assault with a deadly weapon, vandalism, narcotics sales, grand theft auto, and robbery.

The 41st Street and HOB gangs were initially allies, but became rivals in the 1990's.  The gangs' territories are adjacent to one another.  However, there is an area where

7

their territories overlap that both gangs claim as their own. 41st Street members refer to HOB members as "dummies" and "fleas," and the feud between the gangs is generally shown through competing graffiti.  Officer Pacheco had heard and seen 41st Street members tag property with the phrase "Fuck Fleas."

Officer Pacheco spoke to Guevara personally on the night Guevara was arrested.  Guevara admitted to Officer Pacheco that he was a 41st Street gang member, and Officer Pacheco observed "CU" and "FF" tattooed on Guevara's body. After the prosecutor presented Officer Pacheco with a hypothetical that tracked the facts of the incident that occurred on May 14, 2016, in this case, Officer Pacheco opined that the shooting was committed for the benefit or, at the direction of, or in association with a criminal street gang.

Officer Pacheco testified that he was familiar with Aaron Herrera, who was convicted of murder and attempted murder, and German Hernandez, who was convicted of assault with a deadly weapon.  Officer Pacheco opined that both were 41st Street gang members.  On cross examination, Officer Pacheco testified that Herrera's moniker was "Goofy" and Hernandez's moniker was "Solo."

## DISCUSSION

### *Sufficiency of the Evidence*

Guevara makes three arguments regarding the sufficiency of the evidence offered to prove that the 41st Street gang engaged in a pattern and practice of criminal activity through evidence of predicate crimes committed by 41st Street gang members. He challenges the testimony of gang expert Officer Pacheco on the ground that his testimony was not sufficiently specific and on the ground that it included testimonial hearsay in violation of *Sanchez*, *supra*, 63 Cal.4th 665. Guevara also challenges the admission of certified superior court records for the purpose of establishing the dates on which the predicate offenses noted by Officer Pacheco were committed. All three of Guevara's contentions lack merit.

### **Legal Principles**

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) We presume every fact

9

in support of the judgment the trier of fact could have reasonably deduced from the evidence.  (*Ibid*.)  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'  (*Ibid*.)"  (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.)

"[S]ection 186.20 et seq., also known as the California Street Terrorism Enforcement and Prevention Act (the STEP Act or Act), was enacted in 1988 to combat a dramatic increase in gang-related crimes and violence.  The Act imposes various punishments on individuals who commit gang-related crimes—including a sentencing enhancement on those who commit felonies 'for the benefit of, at the direction of, or in association with *any criminal street gang*.' (Pen Code, § 186.22, subd. (b) (section 186.22(b)), italics added.)"  (*People v. Prunty* (2015) 62 Cal.4th 59, 66–67, fn. omitted (*Prunty*).)  A group is a "'criminal street gang'" only if its "members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).)  A "'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" offenses enumerated in the statute. (§ 186.22, subd. (e).)  "These offenses have generally been termed 'predicate offenses'

(although the phrase does not appear in the statute), two or more of which must be proved to have been committed by gang members within a statutorily defined timeframe to establish the gang as a 'criminal street gang.' [Citation.] . . . Predicate offenses need not be gang-related ([*People v.*] *Gardeley* [(1996) 14 Cal.4th 605], 610 [(*Gardeley*), disapproved on other grounds in *Sanchez*, *supra*, 63 Cal.4th at p. 686, fn. 13]), and proof of a conviction is unnecessary (*People v. Garcia* (2014) 224 Cal.App.4th 519, 524)." (*People v. Thompkins* (2020) 50 Cal.App.5th 365, 402–403 (*Thompkins*).) "[A]t least one of these offenses [must have] occurred after the effective date of [section 186.22] and the last of those offenses [must have] occurred within three years after a prior offense." (§ 186.22, subd. (e).) It is not required that "the two or more persons committing the two predicate crimes be gang members *at the time* the offenses were committed." (*People v. Augborne* (2002) 104 Cal.App.4th 362, 375 (*Augborne*).)

### **Proceedings at Trial**

Outside the presence of the jury, defense counsel objected to anticipated testimony by Officer Pacheco as follows:

"In discussions with the People they had indicated that in light of the *Sanchez* ruling, of course, with field identification cards with Mr. Guevara, they're not going to attempt to admit those via the gang expert. However, they

11

are going to be admitting predicate priors to establish the requirements of the Act in [section] 186[.]22. I'm aware of the case law as it stands now and I'll read this out for the court reporter, *People vs.* [*M*]*eraz,* that's [M]-E-R-A-Z, 6 Cal.App.5[th], 1162, has not gone so far as to say that a gang expert can't testify about, for instance, whether or not a predicate prior was committed at the direction of, for the benefit of or by members of a particular criminal street gang.

"That being said, there are a number of post[-]*Sanchez* cases which say if you don't object to what is a reasonable foreseeable change in the law, your defendant isn't entitled to appellate relief. So I think the [*M*]*eraz* case is and the *Sanchez* cases are going to be extended to preclude such testimony.

"I know the law isn't there at this time, but for that purpose I'm objecting. I believe that admitting testimony that is hearsay testimony nature [*sic*] used for the truth of the matter asserted to establish the predicate priors in a gang expert's testimony, I think that is going to be -- eventually, we're going to have clear case law that's inadmissible under both hearsay and *Crawford* [*v. Washington* (2004) 541 U.S. 36 (*Crawford*)].

"And *Crawford* case law, I want the record to be clear with the court's permission, if we can note that objection as [a] registered and standing objection unless the court simply wishes I make it briefly at the time."

The trial court accepted counsel's standing objection.

When trial re-commenced, the prosecutor questioned Officer Pacheco regarding predicate offenses committed by 41st Street gang members:

"[Prosecutor:]  Now, are you familiar with an individual by the name of Aaron Herrera?

"[Officer Pacheco:]  Yes.

"[Prosecutor:]  And do you know Aaron Herrera to be a documented 41st Street gang member?

"[Defense Counsel:]  Objection, leading.

"The Court:  Overruled.

"[Officer Pacheco:]  Yes.

"[Prosecutor:]  And has Aaron Herrera been convicted of any gang related crimes that you're aware of?

"[Officer Pacheco:]  Yes.

"[Prosecutor:]  Is there a particular conviction that comes to mind or that you're referencing?

"[Officer Pacheco:]  Murder.

"[Prosecutor:]  Your Honor, at this time I'd like to introduce a certified docket relating to an Aaron Herrera, 26 pages in length relating to case number BA411218 with a defendant of Aaron Herrera, showing a conviction on July 9th, 2015, for PC 187 subsection (a) murder, with a finding of true the allegation that the crime was committed in connection with a criminal street gang.

"And also, out of the same case, a conviction for violating PC 664/187 subsection (a).  That is attempted murder using a firearm.  And also, finding true as to that

crime that it was committed in connection with a criminal street gang."

The certified court records relating to Herrera's arrests were admitted into evidence.

The prosecutor then questioned Officer Pacheco regarding German Hernandez:

"[Prosecutor:]  And Officer Pacheco, are you familiar with an individual by the name of German Hernandez?

"[Officer Pacheco:]  Yes.

"[Prosecutor:]  And do you know German Hernandez to be a documented member of 41st Street?

"[Officer Pacheco:]  Yes.

"[Prosecutor:]  And has he been convicted of any crimes that you are aware of?

"[Officer Pacheco:]  Yes.

"[Prosecutor:]  And what would that be?

"[Officer Pacheco:]  I believe it was either ADW with a firearm or it was an attempt murder.

"[Prosecutor:]  Your Honor, at this time I would like to introduce another certified docket as People's 40.  It is 21 pages in length.  It relates to case number BA432809, relates to a defendant by the name of German Hernandez and shows a conviction for a violation of Penal Code section 245 subsection (a) subsection (2), assault with a deadly weapon. That deadly weapon being a firearm and a finding with respect to that crime that the crime was committed in connection with a criminal street gang and has a conviction

14

date of April 19th, 2016. May it be so marked as People's 40?

"The Court: Yes."

## **"Generalized and Factually Unsupported" Gang Expert Testimony**

Guevara first contends that the evidence of the predicate crimes was insufficient to support the gang enhancement because the only evidence offered to establish that Herrera and Hernandez were 41st Street gang members was Officer Pacheco's "generalized and factually unsupported" testimony. Specifically, Guevara complains that (1) Officer Pacheco did not testify regarding the basis for his opinion that Herrera and Hernandez were 41st Street gang members, (2) there was no evidence that Herrera and Hernandez were 41st Street gang members at the time they committed the predicate crimes or at that time that they were convicted of those crimes, and (3) there was no evidence that Herrera and Hernandez committed the predicate crimes to benefit the 41st Street gang. The contentions lack merit.[4]

---

[4] The People argue that Guevara forfeited these sub-arguments by failing to raise them below. A defendant's failure to "'make a timely and specific objection' on the ground asserted on appeal" forfeits his appellate arguments based on the erroneous admission of the evidence. (See *People v. Demetrulias* (2006) 39 Cal.4th 1, 20–21 (*Demetrulias*), citing *People v. Partida* (2005) 37 Cal.4th 428, 433–434 (*Partida*).) Here, defense counsel made a standing

At trial, Officer Pacheco testified that he was familiar with Herrera and Hernandez, and knew them to be "documented" 41st Street gang members. The prosecutor did not question Officer Pacheco regarding the source of this knowledge, and defense counsel did not attempt to clarify the issue on cross-examination. Guevara argues that the prosecutor's use of the word "documented" indicates that the officer's knowledge was not personal.

We disagree. The word "documented" simply indicates that *someone* documented Herrera and Hernandez's 41st Street gang membership. That does not preclude the possibility that Officer Pacheco himself documented the men's gang affiliation, and there is ample evidence contained in the record to support that possibility. Officer Pacheco testified that he had been a peace officer for seven years,

---

objection to "testimony that is hearsay testimony nature [*sic*] used for the truth of the matter asserted to establish the predicate priors in a gang expert's testimony, I think that is going to be -- eventually, we're going to have clear case law that's inadmissible under both hearsay and *Crawford*." We find the objection to be sufficiently specific to preserve the related issues of whether expert testimony based on other than personal knowledge is inadmissible as hearsay when offered to prove a predicate offense, or violates the Confrontation Clause if the testimony is both hearsay and testimonial in nature. We conclude that Guevara has therefore preserved the first of the three sub-arguments that we discuss in this section of the opinion, as well as the argument that Officer Pacheco's testimony violates *Sanchez, supra,* 65 Cal.4th 665, and the Confrontation Clause, *post*.

spoke with hundreds of gang members, was involved in hundreds of gang-related investigations and arrests, and was particularly familiar with the 41st Street gang through his work.  We cannot discern from the record whether Officer Pacheco personally documented Herrera and Hernandez's gang membership, or whether he learned that they were documented 41st Street gang members through another source.  Where, as here, the record is not developed regarding the source of an expert's opinion, a defendant may not meet his burden to demonstrate affirmative error, and we will not presume error.[5]  (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1139–1140; accord, *People v. Garcia* (2020) 46 Cal.App.5th 123, 167 (*Garcia*).)

Guevara's argument that the evidence was insufficient because the prosecution failed to present evidence that the predicate crimes were committed for the benefit of the 41st Street gang is not supported by law.  Our Supreme Court has held that predicate crimes need not be gang-related; i.e., predicate crimes need not be committed for the benefit of a criminal street gang.  (*Gardeley*, *supra*, 14 Cal.4th at pp. 610, 621–622.)  It was therefore unnecessary for the prosecution to proffer evidence that the crimes were committed to benefit 41st Street.

---

[5] Because we decide that the record is not sufficiently developed to determine whether Officer Pacheco's testimony was based on his personal knowledge, we need not reach the question of whether his testimony would be admissible if it was not based on personal knowledge.

Guevara's argument that no evidence was offered to show Herrera and Hernandez were 41st Street gang members at the time that they committed the predicate crimes, or when they were convicted of those crimes, fares no better. As Guevara concedes, this court's opinion in *Augborne, supra,* 104 Cal.App.4th at page 375, concludes that there is no such requirement. Guevara suggests that language in the Supreme Court's opinion in *Prunty, supra,* 62 Cal.4th 59, indicates that *Augborne* is no longer good law. Specifically, he highlights that *Prunty* held section 186.22 "requires that the gang the defendant sought to benefit, the individuals that the prosecution claims constitute an 'organization, association, or group,' and the group whose actions the prosecution alleges satisfy the 'primary activities' and predicate offense requirements . . . must be one and the same." (*Prunty, supra,* at pp. 75–76.) *Augborne* is not inconsistent with *Prunty*. *Augborne* held that it is not necessary to establish that the perpetrator of the predicate offense was a member of the same gang as the defendant *at the time of the predicate offense* (*Augborne, supra,* at pp. 371, 375); it did not purport to dispense with the requirement that there must be a showing that the individual who committed the predicate crime was a member of the same gang as the defendant *at some point in time.* We therefore conclude that the prosecution was not required to offer evidence that Herrera and Hernandez were 41st Street gang members at the time of the predicate offenses.

18

### *Testimonial Hearsay*

Guevara next contends that Officer Pacheco's testimony regarding Herrera and Hernandez's 41st Street gang membership must have been based on general, rather than personal knowledge, and was therefore barred by California hearsay laws and the Confrontation Clause, as articulated in *Sanchez*, *supra*, 63 Cal.4th 665.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) The Confrontation Clause thus bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Crawford*, *supra*, 541 U.S. at pp. 53–54, 59.) This bar applies only to testimonial statements; admission of nontestimonial statements, while subject to state law hearsay rules, does not violate the Confrontation Clause. (*Id.* at p. 51.)

"Hearsay . . [is] define[d] . . . as 'evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated[,]' . . . [and] is generally inadmissible unless it falls under an exception. (Evid. Code, § 1200, subd[s]. [(a),] (b).)" (*Sanchez*, *supra*, 63 Cal.4th at p. 674.) "'[T]he hearsay rule has traditionally not barred an expert's testimony regarding his general knowledge in his

field of expertise.'  ([*Sanchez*, *supra*, 63 Cal.4th] at p. 676.)
The reason for this is pragmatic:  because "'experts
frequently acquired their knowledge from hearsay, . . . 'to
reject a professional physician or mathematician because the
fact or some facts to which he testifies are known to him only
upon the authority of others would be to ignore the accepted
methods of professional work and to insist on . . . impossible
standards.'"'  (*Ibid.*; accord, e.g., Imwinkelried, *The Bases of
Expert Testimony:  The Syllogistic Structure of Scientific
Testimony* (1988) 67 N.C. L.Rev. 1, 9 ['As one court stated, it
would be "virtually impossible" for a scientist to avoid
relying on hearsay sources of information.  That observation
is an understatement' (fn. omitted)].)  Because experts rely
on hearsay knowledge and because a jury 'must
independently evaluate the probative value of an expert's
testimony,' including by assessing the basis of the expert's
opinion, the expert is entitled to tell the jury the basis or
"'matter" upon which his opinion rests.'  (*Sanchez*, *supra*, 63
Cal.4th at pp. 685–686.)  Hence, '[i]n addition to matters
within their own personal knowledge, experts may relate
information acquired through their training and experience,
even though that information may have been derived from
conversations with others, lectures, study of learned
treatises, etc.'  (*Id.* at p. 675.)"  (*People v. Veamatahau* (2020)
9 Cal.5th 16, 25 (*Veamatahau*).)

"On June 30, 2016, . . . the California Supreme Court
issued its opinion in *Sanchez*, *supra*, 63 Cal.4th 665, a
pathmarking decision that announced significant changes in

20

the law relating to hearsay testimony by expert witnesses, which in turn made such testimony vulnerable to challenge under *Crawford v. Washington* (2004) 541 U.S. 36 . . . for the first time." (*Thompkins*, *supra*, 50 Cal.App.5th at pp. 404–405.) *Sanchez* held that an expert's testimony may be excluded on hearsay grounds if it relates "'*case-specific* facts about which the expert has no independent knowledge.' (*Sanchez*, *supra*, 63 Cal.4th at p. 676.)" (*Veamatahau*, *supra*, 9 Cal.5th at p. 26.) "Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried." (*Sanchez*, *supra*, 63 Cal.4th at p. 676.) The *Sanchez* "decision [did] not call into question the propriety of an expert's testimony concerning background information regarding his knowledge and expertise and premises generally accepted in his field. . . . [The] decision does not affect the traditional latitude granted to experts to describe background information and knowledge in the area of his expertise." (*Id.* at p. 685.)

 *Sanchez* further held that "if the hearsay relayed by the expert was testimonial, and if *Crawford*'s exceptions did not apply, it also violated the confrontation clause under *Crawford*. (*Sanchez*, *supra*, 63 Cal.4th at pp. 680, 685, 687–700.) 'Testimonial statements are those made primarily to memorialize facts relating to past criminal activity, which could be used like trial testimony.' . . . (*Id.* at p. 689.)" (*Thompkins*, *supra*, 50 Cal.App.5th at p. 406.)

 The courts of appeal have expressed disagreement regarding whether an expert's testimony, that non-

21

defendants who committed predicate offenses were gang members is permissible if it is not based on the expert's personal knowledge.  (See *Thompkins, supra*, 50 Cal.App.5th at p. 411 ["gang predicate activity is an element of a charged enhancement, [and] . . . does . . . place at issue in the case being tried '*particular events*,'" proof of which requires evidence of case-specific facts]; *People v. Bermudez* (2020) 45 Cal.App.5th 358, 375–377 [expert familiar with predicate offenses and non-defendant offenders' gang affiliations through prior reports and conversations with detectives may relate such general background information to jury]; *People v. Blessett* (2018) 22 Cal.App.5th 903, 943–945, review granted Aug. 8, 2018, S249250 [expert testimony that predicate offenders were gang members not case-specific hearsay], disapproved of on another ground by *People v. Perez* (2020) 9 Cal.5th 1, 14.); *People v. Ochoa* (2017) 7 Cal.App.5th 575, 583–586 (*Ochoa*) [expert's statement that gang members who committed predicate offenses admitted their gang membership may have been impermissible hearsay, but record was insufficiently developed to make determination].)

In this case, however, we need not reach the issue.  As we discussed in the prior section of our opinion, defense counsel did not object that Officer Pacheco failed to provide a basis for his opinion that Hernandez and Herrera were gang members, or question Officer Pacheco regarding the basis of his opinion on cross-examination.  We therefore have no way to ascertain, and appellant has no way to show, that Officer

22

Pacheco was not relying on his personal knowledge. "[W]here 'the record is not clear enough for [the appellate] court to conclude which portions of the expert's testimony [may have] involved testimonial hearsay,' then the court will conclude the 'defendant has not demonstrated a violation of the confrontation clause.' (*People v. Ochoa, supra*, 7 Cal.App.5th at p. 586.)" (*People v. Bell* (2020) 47 Cal.App.5th 153, 194; accord, *Garcia, supra*, 46 Cal.App.5th at p. 167 ["Where an appellant has failed to make a timely objection to the expert's testimony, resulting in a lack of clarity over whether the witness testified from personal observations, an appellant may be unable to carry his or her burden on appeal of affirmatively showing error"].)

### *Use of Minute Orders to Establish Date of Predicate Offenses*

Guevara next contends the certified court records[6] relating to Herrera and Hernandez's convictions were inadmissible to prove that the predicate offenses were committed within three years of one another for purposes of

[6] Guevara refers to the certified court records as "minute orders." The exhibits are not included in the record on appeal, but at trial the prosecutor referred to them as "a certified docket relating to an Aaron Herrera, 26 pages in length" and "another certified docket . . . 21 pages in length . . . relat[ing] to . . . German Hernandez." It is not contested that the exhibits were certified court records or that they contained the dates of the predicate offenses in question.

section 186.22, subdivision (e).  He argues that, because the court records could not be used for this purpose and no other evidence of the dates of the predicate offenses was admitted at trial, the evidence was insufficient to support the jury's true finding on the gang enhancement.

The People respond that Guevara forfeited the argument by failing to object to admission of the certified court records at trial, but that, even if preserved, the argument fails on the merits.

We agree that Guevara's standing objection to Pacheco's expert witness testimony was not sufficiently specific to preserve the issue, such that he has forfeited the contention.[7]  (See *Demetrulias, supra*, 39 Cal.4th at pp. 20–21, citing *Partida, supra*, 37 Cal.4th at pp. 433–434 [defendant's failure to "'make a timely and specific objection' on the ground asserted on appeal" forfeits appellate arguments based on erroneous admission of evidence].)

Because Guevara has failed to demonstrate that the prosecution's evidence that the 41st Street gang engaged in a pattern or practice of criminal activity was inadmissible on any of these grounds, he has necessarily failed to demonstrate that the evidence was insufficient to support his convictions.

---

[7] See Footnote 4, *ante*.

### *Ten-Year Gang Enhancement Under Section 186.22, Subdivision (b)(1)(C)*

Guevara contends, and the Attorney General concedes, that the trial court improperly imposed the 10-year street gang enhancement under section 186.22, subdivision (b)(1)(C).  We agree and accept the concession.  Because Guevara violated section 186.22 by committing a felony punishable by life imprisonment for which he received a sentence of life with the possibility of parole, section 186.22, subdivision (b)(5), which provides for a 15-year minimum parole eligibility date, applies.  (*Lopez*, *supra*, 34 Cal.4th at pp. 1010–1011.)  We order that the abstract of judgment be modified accordingly.

## DISPOSITION

The clerk is directed to amend the abstract of judgment by striking the 10-year section 186.22, subdivision (b)(1)(C) enhancement on count 1 and replacing it with a 15-year minimum parole eligibility date (§ 186.22, subd. (b)(5)).  A copy of the amended abstract shall be sent to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed in full.


MOOR, J.

We concur:



RUBIN, P. J.



KIM, J.

26