Filed 3/22/21  P. v. Crummie CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>JOHNASEN LEE CRUMMIE,<br><br>      Defendant and Appellant. | F077994<br><br>(Super. Ct. No. BF167685A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Kaiya R. Pirolo, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted defendant of two felony violations of the Penal Code:  grand theft of Global Positioning System (GPS) monitoring equipment (count 1; Pen. Code,

§ 487, subd. (a)) and failure to appear (count 2; § 1320.5). (Undesignated statutory references are to the Penal Code.) As to each count, it was alleged pursuant to section 12022.1 defendant committed the offenses while released on bail in two other felony cases.

At trial, during the prosecution's case-in-chief, a probation department supervisor testified the cost to the department for the GPS monitor defendant cut (identified by serial number) was $1,150. Before rebuttal, the prosecutor notified the court the wrong GPS monitor was identified in the case-in-chief. Accordingly, during rebuttal, the supervisor discussed the correct GPS monitor that was lost and testified its cost was the same.

On appeal, defendant argues the evidence was insufficient to support his theft conviction because the prosecution did not establish the fair market value of the GPS monitor exceeded $950 or that defendant had "used" it for his benefit and that he intended to deprive the probation department of its use. He further contends the court erred in sentencing him (and staying the sentence) on the two on-bail enhancements to count 2. He also argues the court should have stayed his sentence on count 2 pursuant to section 654 because counts 1 and 2 arose from a single course of conduct with a single objective. Finally, he contends his due process rights were violated because the court imposed certain fines and fees without first determining whether defendant had the ability to pay them.

We agree defendant's on-bail enhancements to count 2 must be stricken. In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND

Defendant pleaded not guilty to grand theft (count 1) and failure to appear (count 2) and the case proceeded to trial.

***Prosecution***

Deputy Probation Officer Juliana Medina put a GPS monitor on defendant. Before placing the monitor on defendant, Medina explained the monitor was the property

2.

of the probation department, but defendant was allowed to have it on the condition he returned it. She also explained to defendant, if the monitor was not returned, if it was lost or damaged, or if he intentionally destroyed it, he would be required to reimburse the department for its value and could be charged with felony theft. Defendant also signed a document acknowledging these conditions on December 9, 2016. The prosecutor introduced into evidence the terms and conditions signed by defendant. The document explained defendant would be required to pay the following amounts for damaged, lost, or destroyed equipment: $1,150 for the transmitter, $149 for the ankle strap, and $109 for the charging unit.

On January 20, 2017, Medina saw an e-mail from the system tracking defendant's GPS monitor. Medina had received it the day before at approximately 9:00 a.m. when she was off duty; it notified her of a "master tamper" at Oregon Street. At trial, Medina explained a master tamper alert may be triggered if the strap of the GPS monitor has been tampered with or if the monitor has been soaked. Defendant's GPS monitor was dead by the time Medina checked the system. She responded to the address where the master tamper occurred but was unable to locate the GPS monitor at that house or the neighboring properties. The probation department never received defendant's GPS monitor back.

Officer Christopher Peck was on duty on January 26, 2017, at approximately 1:30 p.m. when he was dispatched to a location regarding an attempted burglary. During his search of an apartment for a suspect, Officer Peck contacted several people, including defendant. Officer Peck ran a records check on everyone he encountered at the apartment and learned defendant had two felony warrants for his arrest for case Nos. BF161847A and BF156854A. Officer Peck then took defendant into custody; he denied defendant told him he had an outstanding warrant.

Medina spoke to defendant on January 27, 2017, at the central receiving facility after reading him his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), which

3.

defendant acknowledged he understood. Defendant told Medina he woke up late for court on January 19th, drove over to his friend's house, and cut off his monitor because he knew there was going to be a warrant out for his arrest. Defendant said he left the GPS monitor outside of his friend's house on the east side of town by the dumpsters. Medina reminded defendant of the terms and conditions he signed requiring him to return the monitor to the probation department, and defendant said, "[D]o what you got to do. I'm going to prison anyway." He also said he knew he "messed up." On cross-examination, Medina testified the public at large does not have access to the probation department's monitor tracking system. She also testified she did not go back to look for the GPS monitor again after speaking to defendant and he told her he left it outside of his friend's house by the dumpsters.

Probation supervisor Matthew Gomez testified he is tasked with purchasing and inventorying GPS monitors. Based on his experience, Gomez testified the probation department was charged $1,150 for "the placement value" of the GPS unit. He explained the probation department must also purchase the ankle strap that has two fiber-optic lines running through it, which costs $149 to replace. Additionally, "the charging unit replacement value" is $109.

The prosecutor showed Gomez an invoice dated June 29, 2018, for a specific GPS monitor, serial No. 12-777355, which was listed as a "lost unit." Gomez testified the unit was assigned to defendant and the invoice reflected the probation department was charged $1,150 for the GPS monitor.

### Defense and Motion for Acquittal

Defendant testified on his own behalf. He was on felony probation in January 2017 and recalled receiving a GPS monitor from Medina. At some point before Christmas of 2016, the monitor "kept going dead," so Medina called defendant to notify him there was a "tampering going on with it." He explained to her the monitor kept vibrating, and Medina told him to come to the office where she replaced the monitor.

4.

Defendant testified he had a court date on January 19, 2017, but he overslept. He was aware of the court process and that he was due in court that day for two cases—BF161847A and BF156854A—and that he was about to be sentenced. He cut off the GPS monitor after his failure to appear because he did not want the probation department to know his location; he left it by a trash can. He denied trying to sell the monitor or "messing with" it so the probation department could not find it. He conceded he did not call his probation officer to notify her where he left the monitor. But, because the monitor had GPS, he thought the probation department would locate and retrieve it.

Defendant testified he approached Officer Steven Mayberry on a later date and informed him he had two felony warrants out for his arrest. Officer Mayberry did a records check and arrested defendant. Officer Mayberry testified he recalled supervising defendant in juvenile hall and encountering him while assisting Officer Peck in an investigation of an attempted burglary; however, he did not recall speaking to or handcuffing defendant at that time.

According to defendant, he spoke with Medina the day after he was taken into custody and told her the exact location of the GPS monitor, including the address and where he left it. Medina told him she was going to retrieve the GPS unit, but she never went back even though he told her exactly where it was. He denied having the intent to steal; he testified he thought the probation department would be able to find the monitor because it had GPS.

After the defense rested, defense counsel brought a motion for acquittal of count 1 (grand theft) pursuant to section 1118.1 He argued the evidence was insufficient to convict defendant under a theory that he embezzled the GPS device. The prosecutor argued "all four elements were sufficiently shown. The defendant even admitted on the stand he never intended on personally delivering it back to probation. He just left it there on the assumption that probation would go get it with no indication from probation that they would do that," evidencing at least an intent to temporarily deprive. The prosecutor

5.

further argued there was an inference defendant intended to permanently deprive the probation department of the GPS device as well.

The court held there was sufficient evidence to send the case to the jury and to sustain a conviction, denying defendant's section 1118.1 motion.

### Rebuttal

Thereafter, the prosecutor notified the court of her intent to call two rebuttal witnesses based on "some new information." She explained she spoke with the probation department and learned defendant was issued three different GPS monitors, and the serial number on the invoice presented in the People's case-in-chief did not correspond with the monitor defendant lost. Rather, defendant lost the third monitor he was issued so the prosecutor would "be clearing that up on rebuttal." Defense counsel did not object or otherwise comment.

Probation Supervisor Gomez then testified monitor No. 12-777355, which he had previously testified about, was not the correct serial number for the lost device. He explained defendant was issued three different monitors. On December 9, 2016, defendant was initially issued a monitor and signed the terms and conditions, but the device was not working properly so the department assigned defendant a different unit that day. The second monitor, serial No. 12-777355, was deactivated three days later because it needed to be repaired, and defendant was issued a third monitor with serial No. 12-766308. The People introduced the invoice for the third monitor. The invoice reflected the same price, $1,150, as the previously admitted invoice for the second monitor. Gomez testified as a custodian of records for GPS monitors for probation that each monitor is the same cost. He explained the third monitor was also equipped with an ankle strap with a price of $149 and a charging unit with a price of $109; the prices of the ankle straps and charging units have remained the same over the years.

6.

During cross-examination, Medina testified that if she had been working on January 19, 2017, when the tamper notification was received, she would have gone to the location of the GPS monitor and tried to retrieve it.

*Verdict and Sentencing*

The jury convicted defendant of felony grand theft in violation of section 487, subdivision (a) (count 1) and found the GPS monitor was valued at $950 or more. The jury found true two on-bail enhancements to count 1 pursuant to section 12022.1, alleging defendant committed the charged felony while on bail in case Nos. BF156854A and BF161847A. The jury also convicted defendant of felony failure to appear in violation of section 1320.5 (count 2) and found true two on-bail enhancements to count 2 pursuant to section 12022.1 also alleging defendant committed the charged felony while on bail in case Nos. BF156854A and BF161847A.

The court sentenced defendant to a total aggregate term of term of nine years four months. It sentenced defendant to the midterm of four years on count 1 plus an additional four years for the two section 12022.1 enhancements. The court sentenced defendant to one-third the midterm on count 2, a term of 16 months, to be served consecutively to defendant's sentence on count 1. It ordered defendant's sentence on count 2 to be enhanced by four years based on the two section 12022.1 enhancements, but it stayed the punishment on these enhancements pursuant to section 1385 "until the successful completion of the sentence imposed."

## DISCUSSION

### I.    Sufficiency of the Evidence

Defendant argues the evidence was insufficient to establish he committed felony grand theft because it did not establish the value of the GPS monitor was $950 or more, that defendant "used" the property for his benefit, or that he intended to deprive the probation department of its use. We conclude sufficient evidence supports his conviction.

7.

## A. Relevant Factual and Procedural History

During closing argument, the prosecutor argued defendant committed grand theft by embezzlement in this case. The court instructed the jury pursuant to CALCRIM No. 1806 that in order to prove grand theft by embezzlement, the prosecution was required to prove: "1. [a]n owner or the owner's agent entrusted his property to the defendant; [¶] 2. [t]he owner or owner's agent did so because he trusted the defendant; [¶] 3. [t]he defendant fraudulently used that property for his own benefit; [and] [¶] 4. [w]hen the defendant used the property, he intended to deprive the owner of it." (See CALCRIM No. 1806.) The court further instructed the jury pursuant to CALCRIM No. 1801: "If you conclude that the defendant committed a theft, you must decide whether the crime was grand theft or petty theft. [¶] The defendant committed grand theft if the value of the property or services is more than $950." (See CALCRIM No. 1801.)

## B. Standard of Review and Applicable Law

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

A person commits grand theft by unlawfully taking property of a value exceeding $950. (§ 487, subd. (a).) "Embezzlement is the fraudulent appropriation of property by a person to whom it has been [e]ntrusted." (§ 503; see *People v. Vidana* (2016) 1 Cal.5th 632, 639.) The elements of embezzlement are "'1. An owner entrusted his/her property to the defendant; 2. The owner did so because he/she trusted the defendant; 3. The

8.

defendant fraudulently converted that property for his/her own benefit; [and] 4. When the defendant converted the property, he/she intended to deprive the owner of its use.'" (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 636; see CALCRIM No. 1806.)

### C. Substantial Evidence the Value of the GPS Monitor Exceeded $950

Defendant first contends the evidence did not establish the fair market value of the GPS monitor and its parts was greater than $950. We disagree.

#### 1. Applicable Law

Section 484, subdivision (a) defines theft and provides "the reasonable and fair market value" shall be the test for determining the value of stolen property as opposed to the value of the property to any particular individual. (*People v. Romanowski* (2017) 2 Cal.5th 903, 914; see *People v. Cook* (1965) 233 Cal.App.2d 435, 437.) "When you have a willing buyer and a willing seller, neither of whom is forced to act, the price they agree upon is the highest price obtainable for the article in the open market. Put another way, 'fair market value' means the highest price obtainable in the market place." (*People v. Pena* (1977) 68 Cal.App.3d 100, 104.) "However, this rule is by necessity subject to the qualification that under circumstances where, for example, the property has a unique or restricted use and extremely limited market, the actual or replacement cost to the one from whom it was stolen is its fair market value." (*People v. Renfro* (1967) 250 Cal.App.2d 921, 924.)

Fair market value may be established by opinion or circumstantial evidence. (*People v. Grant* (2020) 57 Cal.App.5th 323, 329; accord, *People v. Lizarraga* (1954) 122 Cal.App.2d 436, 438; see generally *People v. Tijerina* (1969) 1 Cal.3d 41, 45 ["[T]he price charged by a retail store from which merchandise is stolen" is also "sufficient to establish the value of the merchandise," absent proof to the contrary].)

9.

### 2. *Analysis*

Defendant asserts Gomez only testified to the "replacement value" of the GPS monitor and did not state its fair market value as required; thus, there was insufficient evidence to support the jury's conclusion the fair market value of the GPS monitor was more than $950. He asserts, because the prosecution failed to establish the fair market value of the GPS monitor exceeded $950, his conviction should be reduced to misdemeanor petty theft. The People respond the cost to the probation department to purchase a new device is the fair market value of the property and, regardless, the technology is unique and has a limited market, so the replacement value is also appropriate evidence of its value. We reject defendant's contentions.

Here, there was substantial evidence from which the jury could conclude the fair market value of the GPS monitor and its parts exceeded $950. Gomez testified generally regarding the price agreed upon by the buyer, the probation department, and the seller of the GPS monitors for the units—$1,150. Gomez further generally testified ankle straps for the GPS monitors cost $149 to replace and charging units cost $109 to replace. The prosecution also introduced both Gomez's testimony and invoices regarding the cost of the two specific GPS monitors assigned to defendant—$1,150 per unit. The quoted amounts reflected the actual value charged for the units in the open market. Thus, these prices reflected the "fair market value" of the GPS units and their attachments, as opposed to the value of the unit or its parts to a particular person. Accordingly, we conclude substantial evidence supports the jury's conclusion the value of the GPS monitor and its related lost parts exceeded $950.

### D.     Court Did Not Err in Denying Defendant's Motion for Acquittal

Defendant next contends the court should have granted his motion for acquittal on count 1 because the evidence was insufficient to establish the fair market value of the lost monitor when the defense rested. He further contends, if the matter is forfeited for his

10.

counsel's failure to renew the motion once the prosecutor disclosed she introduced the wrong invoice, his counsel was ineffective.

### 1. Applicable Law—Motion for Acquittal

After the close of evidence on either side, the court on motion of the defendant or on its own motion, "shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." (§ 1118.1.)

We review the denial of a section 1118.1 motion using the same standard "'employed in reviewing the sufficiency of the evidence to support a conviction.'" (*People v. Veamatahau* (2020) 9 Cal.5th 16, 35; see *People v. Houston* (2012) 54 Cal.4th 1186, 1215.) We thus examine "'"the entire record in the light most favorable to the judgment"' to determine whether it discloses substantial evidence—'"evidence that is reasonable, credible, and of solid value"'—'"from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" (*Veamatahau*, at p. 35.) Our review "'"'presume[s] in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.'" [Citation.] … [O]ur task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might "'"be reasonably reconciled with the defendant's innocence."'"" (*Id.* at pp. 35–36.) Instead, we ask whether there is "'"'"substantial evidence of the existence of each element of the offense charged'"'"" such that any rational jury may have convicted the defendant. (*Id.* at p. 36.)

### 2. Applicable Law—Ineffective Assistance of Counsel

A defendant claiming ineffective assistance of counsel must satisfy the two-part test of *Strickland v. Washington* requiring a showing of counsel's deficient performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) As to deficient performance, a defendant "must show that counsel's representation fell below an

11.

objective standard of reasonableness" measured against "prevailing professional norms." (*Id.* at p. 688.) In evaluating trial counsel's actions, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id.* at p. 689; see *People v. Dennis* (1998) 17 Cal.4th 468, 541.) Thus, a defendant must overcome the presumption that the challenged action might be considered sound trial strategy under the circumstances. (*Strickland*, *supra*, at p. 689; *People v. Dennis*, *supra*, at p. 541.) "Reasonableness must be assessed through the likely perspective of counsel at the time." (*People v. Ochoa* (1998) 19 Cal.4th 353, 445.)

The prejudice prong requires a defendant to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid.*)

### 3. *Analysis*

Defendant contends the court should have granted his motion for acquittal after the defense rested because there was no evidence presented to establish the value of the lost GPS monitor. He asserts Gomez's testimony and the invoice in the prosecution's case-in-chief referred to a monitor with a serial number different from the one he cut off. If the issue was not sufficiently preserved because defense counsel failed to renew the section 1118.1 motion after the prosecutor revealed she presented an invoice and testimony for the wrong GPS monitor, defendant argues his counsel provided ineffective assistance by failing to renew the motion. Again, we reject defendant's contentions.

We cannot conclude the trial court erred in denying defendant's motion to acquit. In the prosecution's case-in-chief, Gomez testified he was the administrator of the GPS program and in charge of purchasing and inventorying GPS monitors. And, as discussed, based on his experience, Gomez testified the probation department was charged $1,150

for each GPS unit, $109 for a charging unit replacement, and $149 to replace an ankle strap of a GPS device. Gomez's testimony pertained generally to the purchase of GPS units by the probation department as opposed to the specific unit assigned to defendant. He also testified regarding a specific unit with a particular serial number assigned to defendant, and the prosecution introduced an invoice reflecting the cost of that unit, $1,150. Viewing the evidence at the time the motion was made in the light most favorable to the court's ruling, we conclude there was substantial evidence from which the jury could conclude the standard cost of a GPS unit and its parts in the marketplace exceeded $950 dollars. (*People v. Ceja* (1988) 205 Cal.App.3d 1296, 1301 ["the sufficiency of the evidence is tested as it stands at the time the (section 1118.1) motion is made"].) Accordingly, we cannot conclude the court erred in denying defendant's section 1118.1 motion for acquittal.

Defendant next asserts, even if the court properly denied the motion initially, it should have granted it after the prosecutor revealed she introduced an invoice for the wrong GPS monitor in her case-in-chief. As defendant acknowledges, his counsel did not renew the motion for acquittal after the prosecutor explained the GPS monitor that was identified in the invoice by serial number was a different monitor than the one defendant was charged with removing. And we disagree with defendant that his counsel was ineffective in failing to renew the motion at that point.

Where, as here, the error claimed is the failure to make a motion, the defendant must show the motion would have been successful. (See generally *People v. Smithey* (1999) 20 Cal.4th 936, 1012; *People v. Grant* (1988) 45 Cal.3d 829, 864; *People v. Upsher* (2007) 155 Cal.App.4th 1311, 1330.) In addition, the defendant must overcome the presumption trial counsel was effective and that the challenged action might be considered sound trial strategy. (*In re Jones* (1996) 13 Cal.4th 552, 561.)

Defense counsel was not asked for an explanation as to why he did not renew the motion for acquittal following the prosecutor's pronouncement. (See *People v. Scott*

13.

(1997) 15 Cal.4th 1188, 1212 [on direct appeal, when no explanation for counsel's conduct can be found in the record, "we must reject the claim [of ineffective assistance of counsel] on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation"]; accord, *People v. Hernandez* (2004) 33 Cal.4th 1040, 1053.)  And there was a satisfactory reason why he may not have done so:  as we have already concluded, the prosecution had introduced substantial evidence of the value of the monitor through Gomez's testimony, even disregarding the invoice.  (See *People v. Lizarraga*, *supra*, 122 Cal.App.2d at p. 437 [testimony of experienced furriers sufficient to establish value of stolen fur pieces]; *People v. Williams* (1959) 169 Cal.App.2d 400, 403 [testimony by experienced salesclerk sufficient to establish value of stolen suits].)

Additionally, there was authority permitting the prosecution to reopen its case-in-chief to introduce additional evidence of this element.  Indeed, our court has held a trial court "always has discretion to allow the prosecution to reopen after a section 1118 motion so long as the court is convinced that the failure to present evidence on the issue was a result of 'inadvertence or mistake on the part of the prosecutor and not from an attempt to gain a tactical advantage over [the defendant].'"  (*People v. Goss* (1992) 7 Cal.App.4th 702, 708; see *People v. Ceja*, *supra*, 205 Cal.App.3d at p. 1304.)  Accordingly, defense counsel could reasonably have decided renewing the motion for acquittal would have been futile because the failure to present the correct invoice during the prosecution's case-in-chief was clearly a result of the prosecutor's inadvertence or mistake rather than an attempt to gain a tactical advantage.  (See *People v. Goss*, at p. 708 [court did not err in denying motion for acquittal and permitting prosecutor to reopen case to prove enhancements after defense rested where prosecutor stated he failed to present evidence of priors during case-in-chief through his own "inadvertence" though evidence was prepared in anticipation of trial]; *People v. Ceja*, at p. 1304 [court did not err in allowing prosecutor to reopen case to present evidence of prior conviction where

14.

failure to prove priors clearly resulted from inadvertence or mistake on part of prosecutor].)

Furthermore, we cannot conclude defendant was prejudiced by his counsel's failure to renew the section 1118.1 motion. As discussed, there was substantial evidence presented in the prosecution's case-in-chief, independent of the invoice, from which a reasonable trier of fact could find the fair market value of the lost GPS monitor and its parts exceeded $950. Accordingly, we cannot conclude a different result was reasonably probable if his counsel had renewed the motion for acquittal after the prosecutor's pronouncement.

We reject defendant's contentions.

### E. Sufficient Evidence Established Defendant "Used" the Property for His Benefit and Intended to Deprive the Probation Department of Its Use

Defendant also challenges his theft conviction arguing there was insufficient evidence he used the GPS monitor for his own benefit or with the intent to deprive the owner, the probation department, of its use as was required to sustain a grand theft conviction based on a theory of embezzlement. Rather, he argues, he removed the property and abandoned it, "doing his utmost *not* to use it." Defendant also asserts the evidence was insufficient to establish he intended to deprive the probation department of its use of the GPS unit. The People respond, "By cutting off the GPS device and leaving it near a dumpster, [defendant] effectively used the discarded technology to mislead his probation officer regarding his location," which benefitted defendant because the probation officer was unable to locate him for almost a week. Again, we conclude the evidence supports defendant's conviction.

There was substantial evidence from which the jury could conclude that by disposing of the GPS monitor, defendant used it for his benefit. Indeed, he admitted he disposed of the unit so the probation department could not track him, a direct benefit he

15.

received from cutting off the unit. Thus, there was substantial evidence to support the jury's conclusion he "used" the property for his benefit.

Likewise, we are not persuaded by defendant's argument the evidence was insufficient to establish he intended to deprive the probation department of the use of the unit. Indeed, defendant had agreed to return the GPS unit to the department but failed to do so. Instead, he cut the ankle strap and left the unit with no intent of returning it to the probation department himself. Such evidence permitted the jury to reasonably infer defendant intended to deprive the probation department of its use of the unit. (*People v. Hall* (1967) 253 Cal.App.2d 1051, 1054 ["A specific intent to steal [the] property … need not be directly proved but may be inferred from all of the circumstances of the case"]; see *People v. Morales* (1993) 19 Cal.App.4th 1383, 1391.)

We reject defendant's contention.

## II. Court Erred in Imposing On-Bail Enhancements to Count 2

Defendant next asserts the trial court erroneously applied the section 12022.1, subdivision (b) on-bail enhancements twice at sentencing, once to count 1 and again to count 2. He argues these offender-related enhancements may be counted only once in arriving at the aggregate sentence for multiple felony convictions under section 1170.1, subdivision (a). The People concede the court erred in this regard. We agree with defendant and accept the People's concession.

In *People v. Coronado* (1995) 12 Cal.4th 145, the California Supreme Court held: "[T]here are at least two types of sentence enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense. [Citations.] Prior prison term enhancements, such as those authorized by section 667.5(b), fall into the first category and are attributable to the *defendant's status* as a repeat offender. [Citations.] The second category of enhancements … arise from the circumstances of the crime and typically focus on what the defendant did when the current offense was

16.

committed. [Citation.]" (*Id.* at pp. 156–157, fn. omitted, 2d italics omitted.) A section 12022.1 enhancement describes the nature of the offender as distinguished from the crime. (*People v. Walker* (2002) 29 Cal.4th 577, 589 ["a section 12022.1 enhancement turns on the status of a defendant as a repeat offender, not on what the defendant did when committing the current crime, i.e., the secondary offense"].) Enhancements describing the nature of the offender such as those pursuant to section 12022.1 are imposed only once in a particular case. (*People v. Augborne* (2002) 104 Cal.App.4th 362, 377.)

We conclude the trial court erred in imposing sentences for the on-bail enhancements to both count 1 and count 2. The court imposed two section 12022.1 on-bail enhancements, adding two 2-year consecutive terms to defendant's sentence for count 1. The trial court also imposed but stayed two more section 12022.1 on-bail enhancements to count 2 pending successful completion of the sentence. Because the on-bail enhancements could only be imposed once, the court should have stricken rather than imposed and stayed the sentences on these enhancements to count 2. Accordingly, we strike the on-bail enhancements and related sentences imposed on count 2. (See *People v. Augborne*, *supra*, 104 Cal.App.4th at p. 377 [court could not impose two on-bail felony sentence enhancements in prosecution for robbery and criminal threats; on-bail sentence enhancement describes nature of offender, rather than nature of offense, and, as such, could be imposed only once in a particular case]; accord, *People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1262 ["a single primary offense would not support two section 12022.1 enhancements—one for each of two secondary offenses"]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 196 ["Imposition of crime-bail-crime enhancements does not depend on the number of offenses charged in the information. Like a prior conviction, it may be added only once to the defendant's sentence"].)

**III.    Court Did Not Err in Ordering Consecutive Sentences**

Defendant further asserts the court erred in running his sentences on counts 1 and 2 consecutively rather than staying one of the sentences pursuant to section 654.

**A.    Standard of Review and Applicable Law**

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)

"A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence."  (*People v. Brents* (2012) 53 Cal.4th 599, 618.)  "'The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case.'"  (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.)  Under this standard, this court must view the evidence in the light most favorable to the trial court's finding and presume the existence of every fact the trial court could reasonably deduce from the record.  (*Vasquez*, at p. 737; *People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)

**B.    Analysis**

Defendant asserts the trial court violated section 654's prohibition against multiple punishments for a single course of conduct by failing to stay his sentence on count 1 or 2. He contends he had the same objective in failing to appear for court and cutting off his GPS monitor—to avoid law enforcement and court surveillance and evade the process of the court.  He asserts his actions constituted an indivisible course of conduct driven by a singular intent and objective, and we should modify the judgment to stay execution on the failure to appear count (count 2).  The People assert defendant "had a distinct intent and objective when he committed each crime."  They contend neither crime was essential to the commission of the other, and there was sufficient time for defendant to renew his criminal intentions in between his decision not to attend court and when he cut off the

18.

GPS device. Accordingly, the court did not err in running the sentences on the two counts consecutively. We cannot conclude the trial court erred in running the sentences consecutively.

Here, there was sufficient evidence from which the court could reasonably conclude defendant's actions giving rise to the charges were divisible and motivated by separate intents and objectives. This is not a case where the charges arose from a single act. (See *Neal v. State of California* (1960) 55 Cal.2d 11, 19 ["Insofar as only a single act is charged as the basis for the conviction, … the defendant can be punished only once"], overruled in part on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334, 338.) Rather, the two offenses are predicated on different acts or omissions: the failure to appear count stemmed from defendant's act or omission of missing his court appearance; whereas the grand theft count was based upon defendant's affirmative act of later cutting off his ankle monitor. The trial court could reasonably conclude defendant failed to appear in court with the intent to avoid being sentenced and to evade the process of the court. The court could also have reasonably concluded defendant's act of cutting off his ankle monitor was motivated by his intent to avoid being arrested and apprehended based upon his failure to appear; indeed, defendant testified he cut off the monitor because he knew it would reveal his location. Though related, such intents and objectives are distinct from one another, and neither was essential to the completion of the other. Accordingly, viewing the evidence in the light most favorable to the judgment, as we must, we conclude substantial evidence supports the trial court's decision to run defendant's sentences on counts 1 and 2 consecutively, rather than stay one of the sentences pursuant to section 654. (See *People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1006–1007 [court not required to stay sentence for evading arrest by reckless driving as incidental to defendant's objective in committing robbery where evidence established two distinct objectives: committing a robbery and evading arrest, and act of evading arrest was not method by which defendant obtained money in robbery]; accord,

19.

*People v. Jimenez* (2019) 32 Cal.App.5th 409, 425 [substantial evidence supported court's conclusion defendant harbored multiple criminal objectives in fleeing from police in car and heading directly toward a second police car—intending to evade and trying to assault]; see generally *People v. Blake* (1998) 68 Cal.App.4th 509, 512 ["Where a defendant entertains multiple criminal objectives independent of and not merely incidental to each other, he may be punished for more than one crime even though the violations share common acts or are parts of an otherwise indivisible course of conduct"].)

The trial court also reasonably could have found defendant had time to reflect before cutting off his ankle monitor, further supporting the divisibility of the crimes. (See *People v. Andra* (2007) 156 Cal.App.4th 638, 640 ["'Under section 654, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]" [Citations.] This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. [Citation.]' [Citation.]"]; accord, *People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11 ["a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment"].) Medina testified defendant reported to her he woke up late for court; then he drove to his friend's house where he cut off the GPS monitor. Such testimony provided substantial evidence defendant's decision to cut off his GPS monitor was temporally separated such that defendant had time to reflect and renew his intent before committing the act giving rise to his theft conviction. Accordingly, such evidence further supports the trial court's conclusion the two crimes were divisible and allowed for the imposition of consecutive sentences.

Defendant's reliance upon *People v. Britt* (2004) 32 Cal.4th 944 (*Britt*) in support of his argument is misplaced. In *Britt*, the California Supreme Court held a defendant

could not be punished for both failing to notify authorities in his old county of his move and failing to register as a sex offender in his new county. (*Id*. at pp. 953–954.) In so holding, the court held both crimes of failing to report constituted means of achieving the common end of avoiding police surveillance. (*Id*. at p. 953.) This objective was achieved just once, but only by the combination of both reporting violations. (*Ibid*.)

Unlike in *Britt*, as discussed, here the court could reasonably have concluded defendant harbored different objectives in failing to appear in court for sentencing and then cutting off his ankle monitor—that is, avoiding court and being sentenced in his outstanding cases and then avoiding detection or arrest as a result of his failure to appear. The acts did not need to be completed together to achieve these independent objectives. Accordingly, *Britt* is inapposite. Instead, we conclude substantial evidence supports the trial court's decision to run defendant's sentences on counts 1 and 2 consecutively rather than stay one of the sentences pursuant to section 654.

We reject defendant's contention.

## IV. Defendant Is Not Entitled to Remand for an Ability to Pay Hearing

Defendant next argues certain imposed fines and fees must be stricken or stayed because the court did not hold an ability to pay hearing before imposing them. We conclude this issue was forfeited.

### A. Relevant Factual Background

At the sentencing hearing, the court ordered restitution pursuant to section 1202.4, subdivision (f) in the amount of $1,408 to the Kern County Probation Department. It also ordered defendant to pay an $80 fee pursuant to section 1465.8, a $60 fee pursuant to Government Code section 70373, a restitution fine of $2,700 pursuant to Penal Code section 1202.4, subdivision (b), and imposed and suspended a parole restitution fine in the amount of $2,700 pursuant to Penal Code section 1202.45 subject to parole or

postrelease supervision revocation proceedings. The record does not reflect defendant requested an ability to pay hearing or objected to the imposed fines and fees at any time.

### B. Analysis

Defendant argues the court violated his due process rights by imposing fees of $80 for the court operations assessment (§ 1465.8), and $60 for the court facilities fees (Gov. Code, § 70373) without determining whether he had the ability to pay these amounts. Defendant's due process argument is based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which was decided after defendant was sentenced and while his current appeal was pending. *Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes" any fines or fees. (*Id.* at p. 1164, see *id.* at p. 1167; accord, *People v. Castellano* (2019) 33 Cal.App.5th 485, 488–489.) Relying on *Dueñas*, defendant asserts the fees must be vacated and the $2,700 restitution fine and $2,700 parole revocation fee must be stayed, and the matter remanded for the court to determine his ability to pay. He also argues the restitution fine imposed under section 1202.4, subdivision (b) violated his state and federal constitutional rights against excessive fines.

Defendant concedes he did not raise his challenges below, but he argues our court can consider the issue for the first time on appeal because *Dueñas* announced a new constitutional principle that reasonably could not have been anticipated at the time of his sentencing hearing. Alternatively, he argues his counsel was ineffective in failing to object on this basis.

In *Dueñas*, the defendant lost her driver's license because she was financially unable to pay her juvenile citations. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1161.) She continued to reoffend for driving with a suspended license because the aggregating criminal conviction assessments and fines prevented her from recovering her license. (*Ibid.*) The *Dueñas* court described this as "cascading consequences" stemming from "a

22.

series of criminal proceedings driven by, and contributing to, [the defendant's] poverty." (*Id.* at pp. 1163–1164.) The *Dueñas* court concluded the defendant faced ongoing unintended punitive consequences because of her inability to pay. (*Id.* at p. 1168.) *Dueñas* determined those unintended consequences were "fundamentally unfair" for an indigent defendant under principles of due process. (*Ibid.*) *Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before imposing court facilities and court operations assessments under section 1465.8 and Government Code section 70373, respectively. (*Dueñas*, at p. 1164; accord, *People v. Castellano*, *supra*, 33 Cal.App.5th at pp. 488–489.) Additionally, although the court is required by section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate the defendant has the present ability to pay the fine. (*Duenas*, *supra*, at p. 1164.)

Here, unlike in *Duenas*, defendant forfeited any challenge to his alleged inability to pay the imposed fines and fees by failing to request an ability to pay hearing. The court ordered defendant to pay a restitution fine of $2,700, well above the statutory minimum of $300. When the court imposes a restitution fine greater than the $300 statutory minimum amount, "[s]ection 1202.4 expressly contemplates an objection based on inability to pay." (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153.) Accordingly, while *Dueñas* had not been decided at the time of defendant's sentencing hearing, defendant had the statutory right to object to the $2,700 restitution fine and demonstrate his alleged inability to pay, and such an objection "would not have been futile under governing law at the time of his sentencing hearing." (*Frandsen*, at p. 1154 [*Dueñas* challenge forfeited by failure to object at sentencing]; see *People v. Aguilar* (2015) 60 Cal.4th 862, 864, 866 [appellate forfeiture rule applies to various fees imposed at sentencing].) "Had defendant brought his argument to the court's attention, it could have exercised its discretion and considered defendant's ability to pay, along with other

relevant factors, in ascertaining the [restitution] fine amount." (*People v. Avila* (2009) 46 Cal.4th 680, 729.) However, by failing to raise the issue below when he had the statutory right to do so, defendant has forfeited his claim on appeal.

We further conclude that defendant's contentions regarding the assessments imposed under section 1465.8 and Government Code section 70373 are likewise forfeited. As a practical matter, if defendant chose not to object to the $2,700 restitution fine based on an inability to pay, he would not complain of the relatively nominal $80 and $60 assessments imposed pursuant to section 1465.8, subdivision (a)(1) and Government Code section 70373, subdivision (a)(1). (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; *People v. Frandsen*, *supra*, 33 Cal.App.5th at p. 1154.) Furthermore, though these fees and assessments were mandatory, nothing in the record of the sentencing hearing indicates defendant was foreclosed from challenging these assessments in the trial court in the first instance. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1074; *Frandsen*, *supra*, at p. 1154.)

Defendant also asserts, if we find forfeiture, his trial counsel was ineffective for failing to object to the imposition of fines and fees based on an inability to pay. He bears the burden of demonstrating ineffective assistance of counsel. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.)

"'[A] defendant claiming a violation of the federal constitutional right to effective assistance of counsel must satisfy a two-pronged showing: that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' [Citations.] Rarely is ineffective assistance of counsel established on appeal since the record usually sheds no light on counsel's reasons for action or inaction." (*People v. Woodruff* (2018) 5 Cal.5th 697, 736.) In determining whether counsel's performance was deficient, we consider whether """counsel's representation fell below an objective standard of reasonableness under prevailing professional

norms ….'"""" (*People v. Johnson* (2016) 62 Cal.4th 600, 653.) Reversal is permitted "'only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.'" (*People v. Arredondo* (2019) 8 Cal.5th 694, 711.) "'If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus.'" (*People v. Gray* (2005) 37 Cal.4th 168, 207.) "'Failure to object rarely constitutes constitutionally ineffective legal representation.'" (*Ibid*.)

We cannot say trial counsel had no conceivable tactical purpose for not requesting an ability to pay hearing. Here, defendant was only 23 years old at the time of sentencing and indicated he earned money cutting hair (approximately $200 per month). Nothing in the probation report or the record indicates defendant was unable to work or otherwise unable to pay the imposed fines and fees. To the contrary, the probation department noted that, based on defendant's provided health information, "it appears he is able to seek and maintain gainful employment." Accordingly, the probation officer recommended defendant "be held accountable to pay all fines and fees as prescribed by the Court." The record is also silent as to whether defendant has money in savings or owns any valuable property. It is thus conceivable counsel concluded there was insufficient evidence of defendant's inability to pay. As such, the record does not affirmatively exclude a rational basis for trial counsel's choice, and therefore defendant has failed to establish ineffective assistance of counsel.

Because we conclude defendant forfeited his challenge to the imposed fines and fees, we decline to address the merits of his claim further; he is not entitled to remand for a hearing on the subject.

## DISPOSITION

The on-bail enhancements imposed on count 2 are ordered stricken. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the above modification and to forward a copy to the appropriate authorities.

PEÑA, J.

WE CONCUR:


POOCHIGIAN, Acting P.J.


DETJEN, J.

26.